UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAF-HOLLAND, INC.,                      )
      Plaintiff,                        )
                               )       No. 1:14-cv-650
-v-                                     )
                               )       HONORABLE PAUL L. MALONEY
HENDRICKSON USA, L.L.C.,                 )
      Defendant.                        )
_____)

## OPINION AND ORDER REGARDING CLAIM CONSTRUCTION

This case concerns two patents-in-suit, which both relate to axle lift assemblies that are slidably coupled with a vehicle/trailer frame. The parties dispute the meaning of 15 terms across two patents, the '998 patent and the '198 patent. The Court held a hearing with respect to claims construction, consistent with *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc) *aff'd*, 517 U.S. 370 (1996) and its progeny. The Court construed several claims on the record, and incorporates all reasoning stated on the record in this opinion.

## I.    Legal Framework

The Federal Circuit Court of Appeals has exclusive jurisdiction over appeals from the final decision of a district court, if the district court's jurisdiction was based in part on an act of Congress relating to patents.  28 U.S.C. § 1295(a); *Apotex, Inc. v. Thompson*, 347 F.3d 1335, 1342 (Fed. Cir. 2003).  Accordingly, the Federal Circuit's rulings on substantive patent law are controlling authority on this court.  *See Eli Lilly and Co. v. Zenith Goldline Pharm., Inc.*, 364 F.Supp.2d 820, 896 (S.D. Ind. 2005) ("Any appeal in this action, which arises under the patent laws of the United States, must be to the United States Court of Appeals for the Federal Circuit, 28 U.S.C. § 1295(a), whose precedent governs matters of substantive patent law in this court."); *GTE Wireless, Inc. v. Qualcomm, Inc.*, 192 F.R.D. 284, 286 n. 1 (S.D.Cal. 2000) ("The Federal

Circuit has exclusive appellate jurisdiction on claims arising from patent law and therefore its authority is binding on this Court."); *see also Panduit Corp. v. All States Plastic Mfg. Co., Inc.*, 744 F.2d 1564, 1574-75 and n. 14 (Fed. Cir. 1984) (per curiam) (noting that procedural matters pertaining to patent issues, as opposed to procedural matters in patent cases that do not pertain to the patent issue, must conform to Federal Circuit law) *overruled on other grounds by Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424 (1984).

Patent infringement analysis involves two steps.  In the first step, the meaning and scope of the patent claims are determined.  *Markman*, 52 F.3d at 976 (Fed. Cir. 1995) (en banc) *aff'd*, 517 U.S. 370 (1996).  In the second step, the construed claims are applied to the allegedly infringing device.  *Id.*; *see Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1476 (Fed. Cir. 1998) ("Since a full and complete understanding of the scope of the claims is requisite to determining whether the patent is infringed, technical terms or words of art or special usages in the claims, if in dispute, are construed or clarified by the court before the construed claims are applied to the accused device.").

This opinion concerns only the first step of an infringement analysis.  The first step, commonly called "claim construction," is a matter of law reserved exclusively for the court. *Markman*, 52 F.3d at 976-79. The purpose or role of claim construction is "neither to limit nor to broaden the claims, but to define, as a matter of law, the invention that has been patented." *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1352 (Fed. Cir. 2001).   "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'"*Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys, Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  The Federal Circuit Court of Appeals has explained that an appropriate analogy for

claim construction is statutory interpretation.  *Markman*, 52 F.3d at 987 (explaining that both involve questions of law, both involve an analysis of words on a written document, both begin with a focus on the language in the document with the interpretation of the language governed by axioms and canons of construction, and in both there is only one correct interpretation).

When determining the proper construction of a claim, a court may consult both intrinsic and extrinsic sources.  Intrinsic sources consist of the patent, including both the specification[1] and the claims, and, if in evidence, the prosecution history.  *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996); *see Netword*, 242 F.3d at 1352; *Markman*, 52 F.3d at 979 (quoting *Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1561 (Fed. Cir. 1991)). "It is well settled that . . . the court should look first to the intrinsic evidence of record, . . .  Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language." *Vitronics Corp.*, 90 F.3d at 1582 (internal citation omitted).  "The claims, specification, and the file history, rather than extrinsic evidence, constitute the public record of the patentee's claim, a record on which the public is entitled to rely.  In other words, competitors are entitled to review the public record, apply the established rules of claim construction, ascertain the scope of the patentee's claimed invention and, thus, design around the claimed invention." *Id.* at 1583.  "Extrinsic evidence is that evidence which is external to the patent and the file history, such as expert testimony, inventor testimony, dictionaries, and technical treatises and articles." *Id.* at 1584; *see Metabolite Labs., Inc. v. Lab. Corp. of America Holdings*, 370 F.3d 1354, 1360-61 (Fed. Cir. 2004).  When intrinsic evidence unambiguously describes the scope of the patented invention, it would be improper for a court to rely on extrinsic evidence.

---

[1]The "specification" is the portion of the patent that comes before the claims.  The specification typically describes the invention and may include the manner and process of making and using the invention.  The specification may include one or more embodiments of the invention.

*Vitronics Corp.*, 90 F.3d at 1583; *see Pall Corp. v. Micron Separation, Inc.*, 66 F.3d 1211, 1216 (Fed. Cir. 1995) ("Extrinsic evidence may also be considered, if needed to assist in determining the meaning or scope of technical terms in the claims.").

When engaged in the construction of claims, courts begin by looking to the words of the claims themselves to define the scope of the patented invention. *Vitronics Corp.*, 90 F.3d at 1582; *Innova/Pure*, 381 F.3d at 1116 ("[A] claim construction analysis must begin and remain centered on the claim language itself, for that is the language the patentee has chosen 'to particularly point[ ] out and distinctly claim[ ] the subject matter which the patentee regards as his invention.'" (quoting *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001) (quoting 35 U.S.C. § 112))) (alterations added in *Interactive Gift*); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999) ("The starting point for any claim construction must be the claims themselves.").  "The touchstone for discerning the usage of claim language is the understanding of those terms among artisans of ordinary skill in the relevant art at the time of the invention." *Metabolite*, 370 F.3d at 1360; *see Phillips*, 415 F.3d at 1313 ("We have made clear, moreover, that the ordinary and customary meaning of a claim term is the meaning that the term would have had to be a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application.").  Such inquiry provides "an objective baseline from which to begin claim interpretation." *Id.*; *see Innova/Pure*, 381 F.3d at 1116 ("The inquiry into the meaning that claim terms would have to be a person of skill in the art at the time of the invention is an objective one."); *Markman*, 52 F.3d at 986 ("[T]he focus is on the objective test of what one of ordinary skill in the art at the time of the invention would have understood the term to mean.").

After reviewing the language of the claims, a subsequent step in claim construction is to review the patent specification.  Claims must always be read in view of the specification, which is "highly relevant to the claim construction analysis.  Usually it is dispositive; it is the single best guide to the meaning of a disputed item." *Vitronics Corp.*, 90 F.3d at 1582; *see Phillips*, 415 F.3d at 1315-16 (collecting cases which have "long emphasized the importance of the specification in claim construction."). When reviewing the specification, the court should "determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning." *Vitronics Corp.*, 90 F.3d at 1582 (alteration added); *see Phillips*, 415 F.3d at 1316 ("[T]he specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess.  In such cases, the inventor's lexicography governs."); *Interactive Gift*, 256 F.3d at 1331 ("If the claim language is clear on its face, then our consideration of the rest of the intrinsic evidence is restricted to determining if a deviation from the clear language of the claims is specified.").  "[T]he specification may reveal an intentional disclaimer, a disavowal, of claim scope by the inventor.  In that instance as well, the inventor has dictated the correct claim scope, and the inventor's intention, as expressed in the specification, is regarded as dispositive." *Phillips*, 415 F.3d at 1316.  "Such special meaning, however, must be sufficiently clear in the specification that any departure from common usage would be so understood by a person of experience in the field of the invention." *Multiform Desiccants*, 133 F.3d at 1477.

When reviewing the specification, the court must keep in mind two axioms: (1) the claim must be construed with a view of the specification and (2) the court may not read a limitation into a claim from the specification.  *Innova/Pure*, 381 F.3d at 1117; *see Playtex Prods, Inc. v. Proctor & Gamble Co.*, 400 F.3d 901, 906 (Fed. Cir. 2005) (noting both axioms).  The Federal

Circuit has recognized that the two axioms create a "fine line" between an acceptable claim construction and an unacceptable one.  *See Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998).

The problem becomes particularly acute when "the written description of the invention is narrow, but the claim language is sufficiently broad that it can be read to encompass features not described in the written description, either by general characterization or by example in any of the illustrative embodiments."  *Liebel-Flarsheim Co. v. Medrad, Inc,*, 358 F.3d 898, 905 (Fed. Cir. 2004).  In these situations, the court should remember to look "'to the specification to ascertain the meaning of the claim term as it is used by the inventor in the context of the entirety of his  invention,' and not merely to limit a claim term."  *Interactive Gift*, 256 F.3d at 1332 (quoting *Comark Communications*, 156 F.3d at 1187).

The Federal Circuit cautioned that "particular embodiments and examples appearing in the specification will not generally be read into the claims."  *Comark Communications*, 156 F.3d at 1187 (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)).  Furthermore, when the specification contains only a single embodiment, the claim should "not be read restrictively unless the patentee has demonstrated a clear intent to limit the claim scope using words or expressions of manifest exclusion or restriction."  *Innova/Pure*, 381 F.3d at 1117 (internal quotation and citation omitted); *see ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1091 (Fed. Cir. 2003) ("Where the written description does not expressly limit the claim term and otherwise supports a broader interpretation, we are constrained to follow the language of the claims and give the claim term its full breadth of ordinary meaning as understood by persons skilled in the art.")  (internal quotation and citation omitted).  Conversely, when the specification makes clear that the description of a particular embodiment is an essential

characterization of the invention, the claim will not encompass a broader subject. *See Anderson Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1367 (Fed. Cir. 2007). Along the same lines, when the specification "makes clear that the invention does not include a particular feature, that feature is deemed outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question." *Scimed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1341 (Fed. Cir. 2001).

Finally, the third source of intrinsic evidence a court may consider is the prosecution history of the patent. The prosecution history, if in evidence, contains the complete report of the proceedings before the Patent and Trademark Office (PTO), including representations by the patentee regarding the scope of the claims. *Vitronics Corp.*, 90 F.3d at 1583. The prosecution history may include prior art cited by the examination of the patent. *Phillips*, 415 F.3d at 1317. Although the prosecution history is "often of critical significance in determining the meaning of the claims," (*Vitronics Corp.*, 90 F.3d at 1582), because it represents an "ongoing negotiation between the PTO and the applicant, rather than the final product of the negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes" (*Phillips*, 415 F.3d at 1317). "Nonetheless, the prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of the prosecution, making the claim scope narrower than it otherwise would be." *Phillips*, 415 F.3d at 1317 (citing *Vitronics Corp.*, 90 F.3d at 1582-83). Like the specification, the prosecution history should be used to understand the claim language and should not be used to "'enlarge, diminish, or vary' the limitations in the claims."

*Markman*, 52 F.3d at 980 (quoting *Goodyear Dental Vulcanite Co. v. Davis*, 102 U.S. 222, 227 (1880)).

Not all sections of the prosecution history are afforded equal weight. For example, the prosecution history "cannot be used to limit the scope of a claim unless the applicant took the position before the PTO that would lead a competitor to believe that the applicant had disavowed coverage of the relevant subject matter." *Schwing GMBH v. Putzmeister Aktiengesellschaft*, 305 F.3d 1318, 1324 (Fed. Cir. 2002); *see Sitrick v. Dreamworks, LLC*, No. 03-4265-svw, 2006 WL 6116641, at * 17 (C.D. Cal. July 20, 2006) ("The prosecution history submitted by the Defendants does not include statements made by the patentee to explain the patent (the typical and most valuable use of prosecution history); rather, what is submitted are comments/objections made by the patent examiner to the patentee, requesting revisions. Because the prosecution history does not include remarks by the patentee, it is of limited usefulness."). In addition, the language of other patents that are made part of the intrinsic evidence through the prosecution history and are entitled to some weight. *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 809 (Fed. Cir. 2007). However, the language in the specification and claims of the patent at issue should be afforded "significantly greater weight" because it is the patentee's own words. *Id.*

When the claims remain ambiguous even after an examination of the intrinsic evidence, a court may rely on extrinsic evidence to interpret the claim. *Phillips*, 415 F.3d at 1317 (citing *Markman*, 52 F.3d at 980. "The court may, in its discretion, receive extrinsic evidence in order 'to aid the court in coming to a correction conclusion' as to the 'true meaning of the language employed' in the patent. *Markman*, 52 F.3d at 980 (quoting *Seymour v. Osborne*, 72 U.S. (11 Wall.) 516, 546 (1871)). Like both the specification and the prosecution history, extrinsic evidence "is to be used for the court's understanding of the patent, not for the purpose of varying

or contradicting the terms of the claims." *Id.* at 981 (citing *United States Indus. Chems, Inc. v. Carbide & Carbon Chems Corp.*, 315 U.S. 668, 678 (1942)); *see Vitronics Corp.*, 90 F.3d at 1584 ("[I]t may not be used to vary or contradict the claim language.  Nor may it contradict the import of other parts of the specification.  Indeed, where the patent documents are unambiguous, expert testimony regarding the meaning of a claim is entitled to no weight." (internal citation omitted)).

## II.     Analysis

### A.     *Identified Terms in the '998 Patent*

#### 1.     <u>"Axle"</u> (Patent '998 claim 1, 5, 8, 9, 11, 13, and 17)

For the reasons stated on the record at a hearing dated February 29, 2016, the Court construes the claim as follows: **"all portions of the axle, including the wheel assemblies."**

#### 2.     <u>"Coupled"</u> (Patent '998, various claims)

For reasons previously stated on the record, the Court construes the claim as follows: **"the joining of two components directly or indirectly to one another."**

#### 3.     <u>"Axle Rotatably Coupled [with the intermediate portion of the trailing arm]"</u> (Patent '998 claims 1, 8, 9, 11, 13)

For reasons previously stated on the record, the Court construes the claim as follows: **"an axle, including the wheel assemblies, joined directly or indirectly, including through the use of intermediate components, to a portion of the arm to permit rotation of the wheel assemblies."**

#### 4.     <u>"Disposed Between"</u> (Patent '998 claims 1, 8, 9, and 11)

For reasons previously stated on the record, and with the agreement of both parties, the Court construes the claim as follows: **"located entirely or partially between."**

5.   **"Component . . . for monitoring a condition indicative of a weight of a load"** (Patent '998 claim 1)

After hearing oral argument, the Court took this claim under advisement.

**SAF-Holland's Interpretation:** none necessary; plain and ordinary meaning or, in the alternative, "a component for monitoring a condition, including, but not limited to, air pressure that is indicative of a weight of a load."

**Hendrickson's Interpretation:** "a component that provides a measurement correlating to the weight of the vehicle's load."

**Analysis:** As an initial matter, the Court is not entirely convinced that this claim requires construction. True, the absence of a "means plus function" format carries an ordinary, and not strong, presumption against the necessity of construction. Here, the claim appears to reference corresponding structure: "An axle lift comprising . . . a component for monitoring a condition indicative of a weight of a load carried by the vehicle frame, wherein the pneumatic actuator raises the axle to the lifted position when the component is indicative of the weight being less than a threshold weight." (ECF No. 36 at PageID.446–47.)

However, in its response brief, SAF-Holland offers a construction if the Court wishes to define it: "a component for monitoring a condition, including, but not limited to, air pressure that is indicative of a weight of a load." The specification does not, as SAF-Holland notes, seem to limit itself to monitoring air pressure, for example. Yet Hendrickson's own definition does not seem to run afoul of this concern. Hendrickson proffers that the component must measure something "correlating to the weight of a load," which seems to be consistent with the claim. Obviously, the air pressure will increase as the weight increases, and a correlation exists, as SAF-Holland implicitly notes. (*See* ECF No. 37 at PageID.769.)

On the other hand, the plain language of the claim, along with the specification, would indicate that the component itself is not required to "*provide* a [formal] measurement." Thus, the Court finds Hendrickson's interpretation is a bit too narrow: "provid[ing] a measurement correlating to the weight of the vehicle's load," might imply that, for example, that the system has to dictate or record a formal measurement, when the system may merely respond to air pressure at a certain threshold, without delineating a weight in pounds or other units.

The specification states that, for example, "the lift assembly 66 will *automatically* move the front axle to the retracted position by inflating the pneumatic actuator 52 to the inflated position 74 when the air pressure *sensed by the pressure sensor* 65 on the air spring 64 of the rear axle assembly 14 is *below a lower threshold level*." (ECF No. 33-2 at PageID.358.) That component itself merely needs to, for example, "sense . . . air pressure," and then "automatically move" at a certain threshold. (*See id.*) Put more simply, a component could send a signal to respond at a certain threshold level without "provid[ing] a measurement." Adding "provid[ing] a measurement" at least arguably adds an additional limitation into the claim.

Thus, a modified interpretation is proper. The Court construes the claim as follows: **"a component that senses a condition correlating to the weight of the vehicle's load."** This definition should address the primary concerns of both parties.

> **6.** **"[A support bracket [that] includes a lower portion having a platform] longitudinally protruding toward [the axle for supporting the pneumatic actuator]."**

For reasons previously stated on the record, the Court construes the claim as follows: **"a support bracket that includes a platform protruding along the length of the trailer toward the axle for supporting the pneumatic actuator."**

7.    **"Sensor for monitoring an air pressure"**

For reasons previously stated on the record, the Court does not construe the claim, leaving it to its **plain and ordinary meaning.**

8.    **"Actuatable"**

After hearing oral argument, the Court took this term under advisement.

**SAF-Holland's Interpretation:** "movable"

**Hendrickson's Interpretation:** "[B]ecause the claim language describes a function without a corresponding structure, 'actuatable' indicates that claims employing it are 'means plus function' claims and should be construed in accordance with the specification. . . . Accordingly, to avoid a finding of indefiniteness, the Court should construe this term in accordance with the specification to mean 'an actuator that operates through a vertical expansion between a horizontal plate and the trailing arm,' as Hendrickson has previously proposed."

**Analysis:** Claim 13 of the '998 patent includes, in relevant part:

A vehicle, comprising:
. . . .
a lift assembly coupled between a trailing arm and the slide assembly, wherein the lift assembly is actuatable between a ground engagement position allowing the first tire to contact the ground surface and a lifted position elevating the first tire away from the ground surface.

(ECF No. 33-1 at PageID.339.)

Under 35 U.S.C. § 112, ¶ 2, the claims of a patent must "particularly point[] out and distinctly claim[] the subject matter which the applicant regards as his invention. A claim is considered indefinite if it does not reasonably apprise those skilled in the art of its scope." *Microprocessor Enhancement Corp. v. Texas Instruments., Inc.*, 520 F.3d 1367, 1374 (Fed. Cir. 2008) (internal citation omitted).

"Claim terms must be given 'the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention.' *Phillips*, 415 F.3d at 1313. This court ascertains the meaning of a disputed term by looking to 'those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean.' *Id.* at 1314. 'Those sources include the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence. . . .' *Id.*" *Id.* at 1377–78 (internal citations omitted).

Means-plus-function claiming occurs when a claim is drafted in a manner that invokes 35 U.S.C. § 112, ¶ 6, which states:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

The Federal Circuit recently clarified that "the failure to use the word 'means' . . . creates a rebuttable presumption . . . that § 112, para. 6 does not apply." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1368 (Fed. Cir. 2015) [hereinafter *Williamson* (en banc)] (en banc).[1] Thus, "the essential inquiry is not merely the presence or absence of the word 'means' but whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Id.*

Here, the Court finds that the term "actuatable" in context is not governed by 35 U.S.C. § 112, ¶ 6. The Federal Circuit has stated that "the claim limitation is not merely . . . [a] phrase . . ., but the entire passage." *Id.* at 1350. Thus, the Court must look to the following:

> A vehicle, comprising:
> . . . .

---

[1] In *Williamson* (en banc), the Court overruled case law that had characterized the presumption as "strong." *Id.* at 1349.

> a lift assembly coupled between a trailing arm and the slide assembly, wherein the lift assembly is actuatable between a ground engagement position allowing the first tire to contact the ground surface and a lifted position elevating the first tire away from the ground surface.

(ECF No. 33-1 at PageID.339.) Here, claim 13 states that *the lift assembly* is "actuatable." (*Id.*)

Defendant seems to misapprehend what a means-plus-function claim is in this context. In *Williamson* (en banc), the Federal Circuit held that "distributed learning control module for receiving communications transmitted between the presenter and the audience member computer systems and for relaying the communications to an intended receiving computer system and for coordinating the operation of the streaming data module" was "in a format consistent with traditional means-plus-function claim limitations"; more particularly, in that claim, "module," "a well-known nonce word," "merely replace[d] the term 'means' . . . [and] thereby connot[ed] a generic 'black box' for performing the recited computer-implemented functions." *Williamson* (en banc), 792 F.3d at 1350. Here, however, the function, "actuat[ing] between a ground engagement position allowing the first tire to contact the ground surface and a lifted position elevating the first tire away from the ground surface," has corresponding structure.[2]

Further, the Federal Circuit "caution[s] against limiting the claimed invention to preferred embodiments or specific examples in the specification." *E.g., Teleflex v. Ficosa America Corp.*, 299 F.3d 1313 (Fed. Cir. 2002). Limiting the claim limitation in its entirety to a particular type of actuation, "through a vertical expansion between a horizontal plate and the trailing arm," as Defendant urges, is improper. *Id.* at 1324 ("[T]he district court committed a 'cardinal sin' of

---

[2] Even Defendant implicitly admits that the "[s]tructure disclosed in the specification qualifies as 'corresponding structure' [because] the intrinsic evidence clearly links or associates the structure to the function recited in the claim." *Williamson* (en banc), 792 F.3d at 1352. Defendant urges the Court to "construe this term in accordance with the specification to mean 'an actuator that operates through a vertical expansion between a horizontal plate and the trailing arm.'" (ECF No. 38 at PageID.810.) Thus, it's unclear how the Court could conclude that the claim is, in fact, indefinite. Regardless, though, again, the structure is "the lift assembly," and its function is to "actuat[e]" as the claim provides.

claim construction by importing limitations from the written description into the claims."). It's clear that the claim limitation "recites sufficiently definite structure and that the presumption against means-plus-function claiming is [not] rebutted." *Williamson* (en banc), 792 F.3d at 1351. Thus, the Court declines to construe "actuatable," or the entire phrase in context.

### B. Identified Terms in the '198 Patent

#### 1. <u>"Axle," "Coupled/Rotatably Coupled," "Disposed Between," "A Component for Monitoring a Condition Indicative of a Weight of a Load," and "Air Pressure Sensor"</u>

For reasons previously stated on the record, **the Court construes the terms above consistent with the constructions for the '998 patent.**

#### 2. <u>"Operable Between"</u>

After hearing oral argument and issuing a preliminary ruling, the Court wishes to clarify its construction.

**SAF-Holland's Interpretation:** "an actuator that can raise the axle toward the vehicle by functioning with respect to the member and the swing arm, even if there are other components located between the member and swing arm."

**Hendrickson's Interpretation:** "located between and able to move the specified component—the 'swing arm' or 'arm'—relative to another specified component—the 'member,' as defined by the specification."

**Analysis:** Both parties seek construction for "operable between" in the context of the phrase "an actuator operable between the member and the swing arm for raising the axle toward the vehicle to lift the tire away from the ground surface."

The Court initially indicated it would construct the term using a modified version of Hendrickson's interpretation, "located entirely or partially between and able to move the specified component—relative to another specified component."

The Court emphasizes that it does not necessarily limit the claim to that described in the specification, for the same reasons stated in *supra* Part II.A.8. The Federal Circuit "caution[s] against limiting the claimed invention to preferred embodiments or specific examples in the specification." *E.g., Teleflex v. Ficosa America Corp.*, 299 F.3d 1313 (Fed. Cir. 2002) ("[T]he district court committed a 'cardinal sin' of claim construction by importing limitations from the written description into the claims.").

The claim limitations that include "operable between" are as follows:

1.   An axle lift assembly comprising:
. . . .
**an actuator operable between the member and the swing arm for raising the axle toward the vehicle to lift the tire away from the ground surface**, wherein the slide assembly and the actuator are operable to respectively adjust the longitudinal and vertical positions of the axle relative to the vehicle for accommodating a condition of the load, and wherein the actuator is pneumatically adjustable between a deflated position with the tire contacting the ground surface and an inflated position with the tire lifted away from the grounds surface;
. . . .
5. The axle lift assembly of claim 1, further comprosing:
a support bracket coupled with the member and protruding downward proximate the first end of the swing arm, wherein the actuator is **operable between** the support bracket and the swing arm.
. . . .
7. An axle lift assembly comprising:
. . . .
**an actuator operable between the member and the swing arm for raising the axle toward the vehicle to lift the tire away from the ground surface**, wherein the slide assembly and the actuator are operable to respectively adjust longitudinal and vertical positions of the axle relative to the vehicle for accommodating a condition of the load; and

a support bracket coupled with the member and protruding downward proximate the first end of the swing arm, wherein the actuator is **operable between** the support bracket and the swing arm, wherein the support bracket includes an upper portion proximate the first end of the swing arm and a lower portion coupled with the actuator, and wherein the vehicle comprises a trailer configured to engage a towing vehicle.

. . . .

9. An axle lift assembly for a trailer that is configured to support a load, comprising:

. . . .

a pneumatic actuator **operable between** the member and the swing arm, wherein the pneumatic actuator is adjustable between a deflated position configured for the tire to contact a ground surface and an inflated position configured to lift the tire away from the ground surface;

. . . .

12. The axle assembly of claim 9, further comprising:

a support bracket coupled with the member and protruding downward proximate the pivot end of the swing arm, wherein the pneumatic actuator is **operable between** the support bracket and the swing arm.

. . . .

17. An axle lift assembly for a vehicle, comprising:

. . . .

an actuator **operable between** the member and the arm and adjustable to raise the swing arm toward the vehicle for lifting the axle away from a ground surface

(ECF No. 33-2 at PageID.359–60 (emphasis added).)

Based on the parties' submissions, they agree that the chosen language "reflect[s] a functional relationship between claimed components." *E.g., Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111 (Fed. Cir. 2004). Defendant argues that "[a]s with 'actuatable' above, the '198 Patent claims employing this phrase fail to provide any structural limitation for this functional language or to limit the actuator or its function in any fashion. . . . Thus, applying the principles of 'means plus function' claiming, and in order to avoid indefiniteness, the Court should therefore construe 'actuator operable between' as limited

specifically to the form of operation disclosed in the '198 patent's specification.'" (ECF No. 38 at PageID.810–11.)[3] However, the Court clarifies that it does not acquiesce to that argument.

First, there are obviously structural limitations for this functional language. The plain language of the claims so reveal. More importantly, however, the Federal Circuit has addressed this very issue:

> Innova's appeal with respect to the asserted claims of the ′759 patent turns on the correct interpretation of the disputed claim term, "operatively connected." According to the district court, the ordinary meaning of "said tube operatively connected to said cap" requires that the two components be "affix[ed] ... by some tenacious means of physical engagement that results in a unitary structure." Innova challenges this construction as improperly importing a tenacious physical engagement limitation into claim language that does not require any such thing. Safari concurs with the district court. The district court erred. The asserted claims do not require that the filter tube and cap be affixed to one another in a manner that results in the two components forming a unitary structure. **Neither party asserts that the term "operatively connected" is a technical term having a special meaning in the art of water filtration. Rather, it is a general descriptive term frequently used in patent drafting to reflect a functional relationship between claimed components.** Generally speaking, and as used in the ′759 patent, it means the claimed components must be connected in a way to perform a designated function. **In the absence of modifiers, general descriptive terms are typically construed as having their full meaning.** *See Johnson Worldwide,* 175 F.3d at 992 (refusing to import a modifier for the term "coupled"); *Va. Panel Corp. v. MAC Panel Co.,* 133 F.3d 860, 865–66 (Fed.Cir.1997) (refusing to import a modifier for the term "reciprocating"). **Thus, the district court was correct to look to the ordinary meaning of the terms "operatively" and "connected"** and we discern no error in the district court's initial understanding that "the ordinary and customary meaning of 'operatively connected' requires the ... linking together of the tube and the cap to produce the intended or proper effect." **But the district court erred when it proceeded beyond this plain meaning based on the "[e]xamples of means for connecting the tube to the cap disclosed in the ′759 patent," all of which reflect a**

---

[3] The Court remains somewhat confused by Hendrickson's position at the hearing relative to that in the briefing. In the briefing, it urges the Court to "apply[] principles of 'means plus function' claiming . . . [and] therefore construe 'actuator operable between' as limited specifically to the form of operation disclosed in the . . . specification." (*Id.*) At the hearing, however, counsel for Hendrickson stated: "If I might clarify. Hendrickson is not arguing that this is a means plus function term." (*See* ECF No. 43.)

**"physical engagement [between the tube and the cap] that results in a unitary structure."** *See Teleflex,* 299 F.3d at 1328.

*Innova/Pure Water, Inc.*, 381 F.3d at 1117–18 (Fed. Cir. 2004). Thus, the Federal Circuit, when construing a similar phrase, first observed that "operatively connected . . . is a general descriptive term frequently used in patent drafting to reflect a functional relationship between the claimed components," *e.g.*, an actuator, member, and swing arm. Next, the Court affirmed an "ordinary and customary meaning of 'operatively connected'" is proper; finally, the Court concluded that, like Hendrickson seeks here, "proceed[ing] beyond this plain meaning based on the" examples disclosed in the specification," was "err[oneous]." *Id.* The Federal Circuit "caution[s] against limiting the claimed invention to preferred embodiments or specific examples in the specification." *E.g., Teleflex v. Ficosa America Corp.*, 299 F.3d 1313 (Fed. Cir. 2002) ("[T]he district court committed a 'cardinal sin' of claim construction by importing limitations from the written description into the claims."). Thus, the Court chooses to leave "operable between" to **its plain and ordinary meaning**.

Since the parties ultimately agreed on a construction, however, the Court construes the claim phrase in context as follows: **"located entirely or partially between and able to move the specified component—relative to another specified component" in the claim, as the claim language indicates, but "operable" is not limited to the particularized methods in the specification examples.**

### 3.     "Member"

After hearing oral argument, the Court took this term under advisement.

**SAF-Holland's Interpretation:** "a part that is movable or adjustable along its longitudinal extent of the vehicle."

**Hendrickson's Interpretation:** "a longitudinal beam that extends along the lower portion of the chassis of the trailer, parallel to the sides of the vehicle."

**Analysis:** The Court finds a modified version of SAF-Holland's interpretation more appropriate. Hendrickson seeks to import limitations from the specification, including "parallel to the sides of the vehicle" and "lower portion of the chassis of the trailer," and defines the "member" as "a longitudinal beam." That is not proper, and cannot be supported by the claim language or SAF-Holland's intentions. *See, e.g., Innova/Pure Water, Inc.*, 381 F.3d at 1117 ("[E]ven where a patent describes only a single embodiment, claims will not be 'read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'" (quoting *Liebal-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898 (Fed. Cir. 2004) (quoting *Teleflex, Inc.*, 299 F.3d at 1327))).

From the original context of claim 1, it's clear the word "member" refers to a portion of the slide assembly:

> 1.   An axle lift assembly comprising:
> . . . .
> A slide assembly having a member movable along a longitudinal extent of the vehicle, the slide assembly operable to secure the member relative to the vehicle at a select position along the longitudinal extent of the vehicle.

(ECF No. 33-2 at PageID.359.)

The Court finds, however, that "part" without any context as to where that part lies is slightly too generic. Thus, the Court concludes that "slide assembly part" is sufficient to define "member," while limiting "member" to the "beam" contained in a specification is not proper. Accordingly, the Court adopts a modified version of SAF-Holland's interpretation: **"a slide assembly part that is movable or adjustable along a longitudinal extent of the vehicle."**

### C.    *"Wherein Clauses"*

After hearing oral argument, the Court took this issue under advisement.

Hendrickson next wants the Court to "construe the 'wherein' clauses as not limiting the claims of the patents in suit." Hendrickson argues that "such clauses merely state a result and provide no particular structure for achieving it." SAF-Holland responds by stating "a 'wherein' or 'whereby' clause that states a condition that is material to patentability may act as a positive limitation in the claim." (ECF No. 37 at PageID.771.)

Hendrickson has not carried its burden to convince the Court to "construe [all] wherein clauses as not limiting the claims of the patents in suit." (ECF Nos. 38 at PageID.812.) A few short paragraphs, with relatively little individualized argument[4] with respect to the plethora of "wherein" clauses does not assist the court to resolve the issues.[5]

None of the case law that Hendrickson cites supports a broad brushstroke of construing all of the "wherein" clauses in this manner, and does not provide sufficient, individualized analysis. *E.g., Trading Tech. Int'l, Inc., v. Espeed, Inc.*, 595 F.3d 1340, 1354 (Fed. Cir. 2010 (observing that all claims of the patent contain a "wherein" clause and concluding that the language in those clauses, which was identical in each clause, supported the district court's claim construction limiting a discrete claim limitation to a specification embodiment); *Texas Instruments, Inc. v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165, 1172 (Fed. Cir. 1993) (providing individualized analysis and determining that a singular "whereby clause" in one claim did not

---

[4] Quoting a clause and then stating that the clause merely describes a result in conclusory fashion is not sufficient analysis.

[5] It appears that there are several examples of wherein clauses that do much more than "state a result." Further, the entire claims in their context seem to provide sufficient structure.

Regardless, it is not the proper stage of litigation to determine whether the patents are "invalid for indefiniteness." *E.g., Nautilus, Inc. v. Biosig Insts., Inc.*, 134 S. Ct. 2120, 2124 (2014) ("[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention.").

add an additional limitation because it "merely state[d] the result of the limitations in the claim [and] add[ed] nothing to the patentability or substance of the claim"); *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1249 (Fed. Cir. 1998) (noting in passing that generally, a limitation is "'extraneous' and cannot constrain the claim" only when the limitation is not necessary "to interpret what the patentee meant by a *particular term* or *phrase in a claim*" (emphasis added)). Indeed, for example, "when [a] 'whereby' clause states a condition that is material to patentability, it cannot be ignored in order to change the substance of the invention." *Hoffer v. Microsoft Corp.*, 405 F.3d 1326, 1329 (Fed. Cir. 2005), *cert. denied*, 546 U.S. 1131 (2006); *see, e.g., Fantasy Sports Prop., Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1111–16 (Fed. Cir. 2002) (construing a claim term, "bonus points," from the phrase, "wherein said players in first and second groups receive bonus points," as a positive limitation in a claim).

Then, Hendrickson states that "[i]f these clauses are deemed to impose requirements, they should be construed," but proffers no constructions, instead reverting to argument that the limitations simply "describe the result of the claimed inventions," or else are "indefinite."

To be fair, SAF-Holland also gives short shrift to the "wherein" clause discussion. (ECF No. 37 at PageID.771.)

If the parties wish the Court to construe certain "wherein" clauses with individualized analysis or can better hone in on individual claims with which they disagree on whether any are limitations, the Court is open to considering those additional claims. However, the briefing and argument here is inadequate. In the absence of more attention to detail, the Court declines to take action with respect to the "wherein" clauses.

### <u>ORDER</u>

For the reasons discussed in the accompanying opinion and on the record in the February 29, 2016 *Markman* hearing, the disputed claim terms in the '998 and '198 patents-in-suit are construed as indicated therein.

**IT IS SO ORDERED.**

Date:  March 4, 2016                  /s/ Paul L. Maloney
                                                Paul L. Maloney
                                                United States District Judge